### IN THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **LIANA MESROPYAN**,<br><br>*Plaintiff,*<br><br>v.<br><br>**GEVORG SEDRAKYAN**,<br><br>*Defendant.* | **CIVIL ACTION NO. 23-975**<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

Plaintiff Liana Mesropyan ("Liana"), by and through her undersigned counsel, brings this civil action against Defendant Gevorg Sedrakyan ("George") and in support thereof states as follows:

### INTRODUCTION

1. This action arises out of George's failure to pay Liana for her equity interest in a company they built together and later sold to a private equity firm.

2. George agreed to pay Liana $3,655,000 for her interest, with $1 million of this a "post-tax" payment (*i.e.*, a payment of $1 million, net of all applicable taxes to Liana in connection with this payment).

3. But George has only paid Liana $2,472,000. Thus, George still owes Liana $1,183,000 (with $128,000 of this post-tax).

4. And despite Liana's repeated requests, George has refused to pay the remaining amounts due to Liana.

5. Liana therefore brings this action against George for breach of contract, quantum meruit, and unjust enrichment.

## THE PARTIES

6. Liana is a resident of Maryland.

7. George is a resident of Florida.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and the parties are of diverse citizenship.

9. This Court has personal jurisdiction over George because he solicits, transacts, and otherwise does business within Virginia and this district and the claims in this action arise out of that business.

10. Venue is appropriate in this Court pursuant to 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred within this district.

## THE FACTS

**A.  Liana and George**

11. Liana is an accomplished businesswoman. She earned an MBA degree from the University of Michigan and a master's degree in public policy, also from the University of Michigan.

12. Liana's husband and George are both doctors. They attended medical school together, where they became friends.

13. After medical school, Liana, her husband, and George remained family friends.

**B.  AllCare**

14. In December 2012, George formed a Virginia professional corporation to provide family medicine and urgent care.

15. George initially named the company after himself, calling it Gevorg Sedrakyan M.D. P.C. (he was also the company's only member, officer, and director).

16. In March 2016, George changed the company's name to Capital HealthCare PC, d/b/a AllCare Family Medicine & Urgent Care ("AllCare").

**C.  Liana is a driving force in AllCare's exponential growth**

17. In November 2017, Liana joined AllCare as its chief operating officer.

18. When she joined, George was the company's only other officer (he was its CEO).

19. When Liana joined AllCare, the company was still in its corporate infancy.

20. Applying a start-up mentality to her role as chief operating officer (the company had no C-suite, except Liana and George), Liana worked unpaid for the first few months. And for several years thereafter, she worked for a nominal wage.

21. Because of Liana's business skill, dedication, and drive, in less than five years, the company grew exponentially, quintupling its operations from six to 30 locations and achieving a corporate valuation of nearly $180 million.

**D.  Liana expands AllCare's practice areas**

22. As this was transpiring, in 2019, Liana and George also discussed expanding the company's practice areas to encompass mental health care services.

23. They agreed to do so. And in December 2019, Liana personally purchased Fairfax Conversations Counseling Center, renaming it AllCare Conversations Counseling Center ("Conversations").

24. George did not make any capital contribution to this acquisition or Conversations' subsequent operating expenses.

25. Instead, Liana personally paid the purchase price for Conversations, personally assumed its office lease, personally furnished the space, and personally assumed ownership of its electronic health records. Liana also personally paid all of Conversations' operating expenses, designed its website, and recruited its therapists.

26. Because of AllCare's favorable billing rates, George advised Liana to bill Conversations services through AllCare. For this reason, Conversations' therapists had to be on AllCare payroll. Subsequently, Conversations billed its services through AllCare's billing mechanism and Conversations' payroll was run through AllCare.

27. In recognition of each party's contribution to Conversations, Liana and George agreed that they would share ownership of Conversations equally. And because they were family friends, they did not believe it necessary to memorialize this in a written partnership agreement.

**E.     Private equity firm buys majority stake in AllCare**

28. Liana was a driving force, as noted, in quintupling AllCare's business operations in less than five years, as well as expanding the company's practice areas to mental health care.

29. With this exponential expansion growth of the business, AllCare (including the mental health care practice) became an attractive target for private equity acquisition.

30. In 2020, George engaged Intrepid Investment Bankers, LLC to prepare AllCare for sale. With Liana's support, Intrepid prepared AllCare for the sale and presented it to several private equity firms. In 2021, after rounds of multiple meetings, Summit Partners L.P. ("Summit") was selected as a purchaser of a majority stake in AllCare.

31. George suggested to Liana that they include Conversations in the sale, as the mental health care practice made AllCare a much more attractive and valuable target. Liana agreed.

32. Ultimately, the parties agreed that AllCare (including the mental health care practice, Conversations) had an aggregate enterprise valuation of $177 million. And they further agreed that Summit would acquire a 52 percent ownership stake in AllCare (including the mental health care practice, Conversations) for $92,040,000.

**F.     George and Liana agree on her founder's equity interest in AllCare**

33. As these negotiations with Summit were underway, Liana and George also negotiated her equity stake interest in AllCare (including her interest in Conversations).

34. With the $177 million valuation agreed upon with Summit, George and Liana soon agreed that George would pay Liana $5 million when the sale was consummated in exchange for her founder's equity interest in AllCare (which would also encompass her interest in Conversations).

35. In December 2021, the sale to Summit of AllCare (including Conversations) was consummated.

36. Following the sale, Liana stayed on at AllCare as chief operating officer.

37. George, however, did not pay Liana the agreed-upon $5 million. Instead, George asked Liana to amend their agreement.

**G.     George and Liana amend their agreement**

38. Specifically, George proposed that instead of paying Liana the lump sum of $5 million, he would transfer a 1.5 percent equity interest in AllCare to her (which would also encompass her interest in Conversations), plus pay her $1 million in post-tax cash (*i.e.*, a payment of $1 million, net of all applicable taxes to Liana in connection with this payment). Liana agreed. And George confirmed their amended agreement in writing in June 2022.

39. After several months under AllCare's new majority owner, Liana resigned. As this was transpiring, she and George also discussed her departure from AllCare.

40. George and Liana agreed that, rather than Liana retaining a 1.5 percent ownership interest in AllCare (including Conversations) after her resignation, George would purchase Liana's 1.5 percent interest back from her for $2,655,000. They also agreed that George would pay Liana the previously agreed-upon $1 million in post-tax cash (for a total payment of $3,655,000).

41. In September 2022, George texted Liana, "Dear Liana — give me the bank info, I want to transfer initial $1.6 million."

42. Liana did so. And George thereafter transferred $1.6 million of pre-tax cash.

43. To date, however, George has not paid the remaining $1,055,000 of pre-tax cash, despite Liana's repeated requests that he do so.

44. Nor has George paid Liana the agreed-upon $1 million in post-tax cash; rather, he has only paid $872,000 of this amount.

45. Thus, George still owes Liana $1,055,000, plus $128,000 in post-tax cash.

## COUNT ONE: BREACH OF CONTRACT

46. Liana incorporates paragraphs 1 through 45 as if fully set forth herein.

47. The parties formed a definite and legally enforceable agreement that George would purchase Liana's equity interest in AllCare (including Conversations) for $2,655,000, plus $1 million in post-tax cash, for a total payment of $3,655,000.

48. Liana has conveyed her interest in AllCare (including Conversations) to George. George, however, has not paid Liana the full amount of the purchase price.

49. Instead, George has only paid Liana $1.6 million of the agreed-upon $2,655,000, and $872,000 of the agreed-upon $1 million post-tax cash.

50. Thus, George still owes Liana $1,183,000. And by failing to pay this amount to Liana, George has materially breached the parties' agreement.

## COUNT TWO: QUANTUM MERUIT

51. Liana incorporates paragraphs 1 through 45 as if fully set forth herein.

52. In the alternative to count one as pled above, if the parties did not have an enforceable express contract regarding the compensation owed to Liana, George nevertheless owes Liana damages equal to the reasonable value of the work performed as an AllCare co-founder.

53. When one party confers value to another at the latter's request, but for some reason an enforceable express contract is not formed, the law will imply a contract to ensure that the performing party is awarded damages amounting to the reasonable value of the work performed.

54. Liana performed the AllCare start-up work assigned to her by George, exponentially growing AllCare's business, quintupling its business operations and expanding its practice areas, which George welcomed and accepted.

55. Without Liana's efforts, AllCare never would have received a $177 million valuation from Summit.

56. The parties understood and agreed that Liana expected to receive compensation for her services with a founder's equity stake in AllCare, and George repeatedly stated to Liana that she would receive a founder's equity stake in AllCare in exchange for her services.

57. George has benefited from Liana's efforts with respect to AllCare and will continue to benefit for years into the future.

58. It would be inequitable to allow George to retain the benefit of Liana's work without paying her for the reasonable value of her work as an AllCare co-founder. So, in the absence of an enforceable contract determining the payment George owes to Liana for her work as an AllCare co-founder, the Court should award reasonable compensation to Liana.

## COUNT THREE: QUANTUM MERUIT

59. Liana incorporates paragraphs 1 through 45 as if fully set forth herein.

60. In the alternative to counts one and two as pled above, if the parties did not have an enforceable express contract regarding the compensation owed to Liana, George has been unjustly enriched by the work Liana performed as an AllCare co-founder.

61. A defendant is unjustly enriched when the plaintiff conferred a benefit on the defendant, the defendant knew of the benefit and knew or should reasonably have expected to repay the plaintiff, and the defendant accepted or retained the benefit without paying for its value.

62. Liana conferred significant benefits on George in her work as an AllCare co-founder.

63. George knew the benefits Liana was conferring and expected to pay Liana for it in the form of a founder's equity stake in AllCare.

64. George has accepted the benefits of Liana's efforts but has not paid for their value.

65. To prevent George's unjust enrichment, the Court should award Liana the value of her work retained by George.

## CONCLUSION

WHEREFORE, Plaintiff Liana Mesropyan respectfully requests that this honorable Court enter judgment against Defendant Gevorg Sedrakyan for the following relief:

a. compensatory damages of at least $1,055,000, or in such exact amount to be determined at trial;

b. costs and expenses;

c. pre-judgment and post-judgment interest; and

d. any such further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: July 25, 2023

Respectfully submitted,

WASHINGTON GLOBAL LAW GROUP PLLC

/s/ *Tom Cummins*
Tom Cummins (VSB No. 80270)
Max Maccoby (VSB No. 87165)
Washington Global Law Group PLLC
1701 Pennsylvania Ave., NW #200
Washington, DC 20006
tcummins@washglobal-law.com
maccoby@washglobal-law.com
Tel: 202-248-5434

*Attorneys for Liana Mesropyan*